UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA K. V.,[1] <br> Plaintiff, <br> v. <br> ANDREW M. SAUL,[2] <br> Commissioner of Social Security, <br> Defendant. | Case No. ED CV 19-00063-RAO <br><br> **MEMORANDUM OPINION AND ORDER** |

**I.  INTRODUCTION**

Plaintiff Anita K. V. ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"), supplemental security income ("SSI"), and disabled widow's benefits ("DWB"). For the reasons stated below, the decision of the Commissioner is **AFFIRMED.**

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul, the current Commissioner of Social Security, is hereby substituted as the defendant herein.

## II. PROCEEDINGS BELOW

On October 28, 2014, Plaintiff filed an application for a period of disability, DIB, and DWB alleging disability beginning on November 30, 2011. (Administrative Record ("AR") 257-58.) The same day, Plaintiff also protectively filed an application for SSI under Title XVI alleging disability beginning on October 28, 2005. (AR 259-64.) Her application for a period of disability, DIB, and DWB was denied on March 4, 2015. (AR 160.) Plaintiff filed a written request for hearing, and a hearing was held on September 15, 2017. (AR 48-77, 176-77.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 48-77.) On December 6, 2017, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[3] from November 30, 2011 through the date of decision. (AR 31-42.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on January 10, 2019. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2011, the alleged onset date ("AOD"). (AR 34.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: syncope, episodes of unclear etiology, C5-6 osteophytic encroachment, cervical radiculopathy, anxiety, depression, mood disorder, bipolar disorder, and borderline personality disorder. (*Id*.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or

///

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

2

medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . except [Plaintiff] can lift carry, push and pull 20 pounds occasionally and 10 pounds or less frequently. She can stand and/or walk for six hours out of an eight-hour workday with regular breaks. She can sit for six hours out of an eight-hour workday with regular breaks. She can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes or scaffolds. She cannot work at unprotected heights, around moving machinery, or other hazards. She can perform frequent bilateral fine and gross manipulation. She can concentrate for up to two-hour periods of time but would be limited to unskilled tasks in a nonpublic setting. She can occasionally interact with coworkers and supervisors. She cannot perform jobs requiring hypervigilance or intense concentration on a particular task. She cannot be responsible for the safety of others. She cannot perform fast-paced production or assembly line type of work.

(AR 35-36.)

At **step four**, the ALJ found that Plaintiff was unable to perform her past work as a licensed vocational nurse. (AR 40.) At **step five**, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 41.) Accordingly, the ALJ determined that Plaintiff had not been under a disability from the AOD through the date of decision. (AR 42.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises a single issue for review: whether the ALJ properly considered the opinion of Plaintiff's treating psychiatrist. (*See* Joint Submission ("JS") at 5.)

### A. The ALJ Properly Assessed the Opinion of Plaintiff's Treating Psychiatrist

Plaintiff argues that the ALJ failed to properly consider the opinion of Plaintiff's treating psychiatrist. (*See* JS at 7-15, 24-26.) The Commissioner disagrees. (*See* JS at 15-24.) For the reasons discussed below, the Court agrees with the Commissioner.

///

1. **Applicable Legal Standards**

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

2. **Opinion of Homer L. Ramsey, M.D.**

On February 3, 2017, Plaintiff's treating psychiatrist, Dr. Ramsey, prepared a mental residual functional capacity assessment. (AR 606-09.) As to Plaintiff's understanding and memory, Dr. Ramsey opined that Plaintiff's ability to remember locations and work-like procedures, understand and remember very short and simple instructions, and understand and remember detailed instructions was markedly limited. (AR 606.) Dr. Ramsey also noted that Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within

customary tolerances, and her ability to work in coordination with or proximity of others without being distracted by them was markedly limited. (*Id.*) Plaintiff's ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and ability to perform at a consistent pace without an unreasonable number and length of rest periods was also noted to be markedly limited. (AR 607.) However, Plaintiff's ability to carry out very short and simple instructions, ability to sustain an ordinary routine without special supervision, and her ability to make simple work-related decisions were only moderately limited. (AR 606.)

As to Plaintiff's social interaction abilities, Dr. Ramsey found Plaintiff's abilities to be limited. (AR 607.) Plaintiff's ability to ask simple questions or request assistance was only moderately limited. (*Id.*) However, Plaintiff's ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from a supervisor, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness was markedly limited. (*Id.*)

Dr. Ramsey also opined that Plaintiff's ability to respond appropriately to changes in the work setting and ability to travel in unfamiliar places or use public transportation was markedly limited. (AR 607.) Plaintiff's ability to be aware of normal hazards and take appropriate precautions was moderately limited. (*Id.*) Her ability to set realistic goals or make plans independently of others was also moderately limited. (*Id.*) Dr. Ramsey did not make any additional remarks or elaborations as to his findings. (AR 606-08.)

On January 10, 2018,[4] after the ALJ's decision, Dr. Ramsey authored a letter ("January 2018 Letter") discussing Plaintiff's diagnosis and care "in an attempt to

---

[4] The letter is dated January 10, 2017. (AR 83.) However, it was faxed on January 11, 2018. (*Id.*) The Commissioner notes that the 2017 date is likely a typographical error. (JS 22 n.5.) Plaintiff concedes that this is a reasonable interpretation. (JS 26.)

6

clarify how debilitating [Plaintiff's] illness is and hope that she will receive the help that she needs." (AR 83-84.) Dr. Ramsey explained that Plaintiff suffers from Bipolar Mood Disorder. (AR 83.) As a result, Plaintiff exhibits "severe mood instability and anxiety, both of which prevent her from working." (*Id.*) Dr. Ramsey notes that Plaintiff's "moods are so unstable that she is never stable enough to know that she will be able to handle the stressors of the workplace from day to day." (*Id.*)

In the letter, Dr. Ramsey also explains that Plaintiff is on four different medications, "each intended to address the different clinical presentations of her psychiatric illness." (AR 83-84.) Plaintiff takes Latuda for bipolar depression. (AR 84.) She takes Abilify to "stabilize her mood and decrease her anger." (AR 84.) Plaintiff also takes lithium carbonate to "stabilize her mood, help with sleep and reduce anxiety." (*Id.*) In addition, Plaintiff takes Ativan to treat her anxiety. (*Id.*) Dr. Ramsey describes this as "aggressive treatment," but notes that Plaintiff continues to be "symptomatic to the point where she cannot work." (*Id.*)

As to Plaintiff's physical ailments, Dr. Ramsey explains that Plaintiff has "ongoing symptoms of chronic pain related to injuries to both elbows." (AR 84.) He notes that the severity of Plaintiff's ongoing pain, makes it "impossible" for Plaintiff to work. (*Id.*) Plaintiff underwent surgery on her right elbow, but Dr. Ramsey notes that the surgery was not successful. (*Id.*) Plaintiff has not undergone any treatment on her left elbow. (*Id.*) Dr. Ramsey opines that these physical ailments along with Plaintiff's "severe mood lability" make it "more impossible for her to sustain gainful employment." (*Id.*)

Dr. Ramsey concludes his letter by warning that "[p]sychiatric illness is often elusive, with no outward signs that make it obvious that a patient cannot work. This is especially true in this case." (*Id.*)

### 3. Discussion

The ALJ discounted Dr. Ramsey's opinions and conclusions, giving the opinion little weight. (AR 40.) Instead, the ALJ gave great weight to the opinions

7

of the state agency review psychologist, Phaedra Caruso-Radin, Psy. D., and the psychological consultative examiner, Aroon Suansilppongse, M.D. (*Id.*, citing AR 85-118, 121-156.) The ALJ noted that Drs. Caruso-Radin and Suansilppongse found Plaintiff "could perform unskilled work with limited public contact." (AR 40.) Because Dr. Ramsey's opinion is inconsistent with these opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence in order to reject Dr. Ramsey's opinion. *See Lester*, 81 F.3d at 830. The ALJ provides four reasons for assigning Dr. Ramsey's opinion little weight. (*See* AR 40.)

First, the ALJ faults Dr. Ramsey for his use of a "checklist-style form [which] includes only conclusions regarding functional limitations without any rationale for those conclusions." (AR 40.) Plaintiff argues that the mental function report provided by Dr. Ramsey was supported by the January 2018 Letter which provided additional information. (JS at 11, 25.) The Commissioner disagrees and argues that Dr. Ramsey's opinion provides only conclusions without rationale. (JS at 17.)

The Ninth Circuit has held that an "ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996)); *Carr v. Colvin*, No. CV 14-09134-DFM, 2016 WL 626729, at *5 (C.D. Cal. Feb 16, 2016). Here, Dr. Ramsey provided a checklist-style form outlining Plaintiff's abilities and failed to provide any reasoning for his opinion. (*See* AR 606-08.) While the ALJ did not have the benefit of reviewing Dr. Ramsey's January 2018 Letter, having been considered by the Appeals Council, the letter becomes a part of the record subject to this Court's review. *See Brewes v. Astrue*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence"). However, the January 2018 Letter offers only a brief and conclusory explanation of Plaintiff's

| | |
|---|---|
| 1 | condition. Dr. Ramsey explains Plaintiff's treatment, which consists only of |
| 2 | medication, and notes that Plaintiff is unable to work due to her "severe mood |
| 3 | instability and anxiety" caused by her bipolar mood disorder. (AR 83-84.) "'[A]n |
| 4 | ALJ may discredit treating physicians' opinions that are conclusory, brief, and |
| 5 | unsupported by the record as a whole or by objective medical findings." *Burrell v.* |
| 6 | *Colvin*, 775 F.3d 1133, 1040 (9th Cir. 2014) (quoting *Batson v. Comm'r of Soc. Sec.* |
| 7 | *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)) (emphasis omitted). Because Dr. |
| 8 | Ramsey's opinion is brief and conclusory, the Court finds that this is a specific and |
| 9 | legitimate reason for discounting Dr. Ramsey's opinion. |
| 10 | Second, the ALJ discounted Dr. Ramsey's opinion because the "longitudinal |
| 11 | medical record does not support such restrictive measures." (AR 40.) However, "to |
| 12 | simply state that a treating physician's opinion is not supported by objective findings |
| 13 | or is contrary to the conclusions mandated by the evidence is *not* sufficient." *Crayton* |
| 14 | *v. Bowen*, 874 F.2d 815, 1989 WL 41721, at *3 (9th Cir. 1989) (table) (citing *Embrey*, |
| 15 | 849 F.2d at 421). This approach does not provide the level of specificity required by |
| 16 | the Ninth Circuit, "even when the objective factors are listed seriatim." *Embrey*, 849 |
| 17 | F.2d at 421. Although an ALJ need not recite "magic words" to reject a treating |
| 18 | physician's opinion, he must—in addition to merely summarizing the facts— |
| 19 | interpret the evidence and make findings. *See Magallanes v. Bowen*, 881 F.2d 747, |
| 20 | 755 (9th Cir. 1989). Merely stating that objective evidence is contrary to the opinion |
| 21 | evidence, without relating that evidence to specific rejected opinions and findings, is |
| 22 | inadequate. *Embrey*, 849 F.2d at 421; *see Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ |
| 23 | errs when he rejects a medical opinion or assigns it little weight while doing nothing |
| 24 | more than ignoring it, asserting without explanation that another medical opinion is |
| 25 | more persuasive, or criticizing it with boilerplate language that fails to offer a |
| 26 | substantive basis for his conclusion."); *Carmona v. Berryhill*, No. EDCV16-01376- |
| 27 | AJW, 2017 WL 3614425, at *4 (C.D. Cal. Aug. 22, 2017) ("Saying that a medical |
| 28 | /// |

opinion is 'inconsistent with the substantial evidence' is not a specific reason for rejecting the opinion; it is nothing more than boilerplate.").

Similarly, a finding that a treating physician's opinion is inconsistent with other evidence in the record "means only that the opinion is not entitled to 'controlling weight.'" Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[5] "Even when there is substantial evidence contradicting a treating physician's opinion such that it is no longer entitled to controlling weight, the opinion is nevertheless 'entitled to deference.'" *Weiskopf v. Berryhill*, 693 F. App'x 539, 541 (9th Cir. 2017) (citing *Orn*, 495 F.3d at 633); *see* 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012 to Mar. 26, 2017) (when a treating source's medical opinion is unsupported by medical evidence or is inconsistent with other substantial evidence, such that it does not receive controlling weight, the ALJ must apply the listed factors to determine its weight). The opinion "must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4. These factors include, *inter alia*, the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c). Although the ALJ is not required to analyze each factor in detail, he must indicate that he has considered all the relevant factors. *See Carbajal v. Berryhill*, No. EDCV 17-0970-AFM, 2018 WL 1517161, at *4 (C.D. Cal. Mar. 27, 2018) (collecting cases); *Clark v. Berryhill*, No. 3:16-CV-02854-BEN-AGS, 2018 WL 948489, at *2 (S.D. Cal. Feb. 20, 2018).

Here, the ALJ recounted Plaintiff's mental health treatment. (*See* AR 38-39.) However, the ALJ did not discuss Dr. Ramsey's treatment of Plaintiff with any level of specificity. The ALJ did not note the length of the treatment relationship, the frequency of examination, or the nature and extent of the treatment relationship. The

---

[5] Although this Ruling was rescinded for claims filed on or after March 27, 2017, *see* Soc. Sec. Ruling 96-2p, 2017 WL 3928298 (S.S.A. Mar. 27, 2017), it remains applicable to Plaintiff's claim.

10

record here shows that Dr. Ramsey began treating Plaintiff in September 2016. (AR 549-50.) Plaintiff testified that she met with Dr. Ramsey once per month. (AR 72.) However, when discussing Dr. Ramsey's relationship with Plaintiff, the ALJ noted only that Dr. Ramsey was Plaintiff's treating doctor. (AR 40.) This does not satisfy the level of specificity required of the ALJ. *See Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018) ("a cursory acknowledgment" of a physician as a "treating physician" does not indicate that the factors were properly considered).

The Commissioner argues that Plaintiff "submitted minimal treatment records from Dr. Ramsey or any other mental health specialist to support her claims of disability, even though it was her burden to do so." (JS at 16.) Plaintiff counters that she was unable to provide any additional records because the policy of the institution where Dr. Ramsey treats Plaintiff does not release therapy notes. (JS at 25, citing AR 8.) However, Plaintiff notes uncertainty as to whether the institution's policy applies to "routine therapy notes from her psychiatrist." (JS at 25.)

While it is Plaintiff's duty to prove disability, the ALJ's duty here was to determine what weight to assign Dr. Ramsey's opinion. The ALJ discounted Dr. Ramsey's opinion and gave it little weight but failed to discuss with any level of specificity the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. If the ALJ required additional information to determine what weight to give Dr. Ramsey's opinion, it was the ALJ's duty to further develop the record. *See* 20 C.F.R. § 404.1545(a)(3) (stating "before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources"). Thus, the ALJ's reasoning that the longitudinal record does not support the restrictive measures in Dr. Ramsey's opinion is not a specific and legitimate reason for discounting Dr. Ramsey's opinion.

///

Third, the ALJ discounted Dr. Ramsey's opinion because Plaintiff's condition had improved, and she had remained stable since 2016. (AR 40.) An ALJ may properly discount a treating physician's opinion when the functional limitations set forth by the physician are inconsistent with improvement found in the record. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding the ALJ properly discounted treating physician's opinion where there was documented improvement in plaintiff's symptoms and the treating physician had previously indicated plaintiff was not disabled); *Dunlap v. Colvin*, No. CV 15-07597-DFM, 2016 WL 4009815, at *3 (C.D. Cal. July 25, 2016).

Plaintiff argues that "[a]lthough 2016 treatment notes described [Plaintiff's] anxiety as better with Zoloft, such relative statements should be viewed in context with the record as a whole to determine whether they actually mean, for example, whether symptoms have not worsened." (JS at 12-13.) The Commissioner counters that even if Plaintiff's interpretation of the medical record is rational, the ALJ's interpretation was reasonable and should not be disturbed. (JS at 22-23.)

Specifically, Plaintiff references treatment notes from March 2016 to March 2017 in support of her argument. (*See* JS at 12-13, 26.) Plaintiff points to a treatment note in March 2016 in which Plaintiff reports having panic attacks that cause "tingling and numbness of the lips." (*See* JS at 12-13, citing AR 578.) However, the complete notation states Plaintiff "has tingling and numbness of the lips due to panic attacks and anxiety which get better with [Z]oloft," which supports the ALJ's finding of improvement in Plaintiff's condition. (AR 578.) Next, Plaintiff references an April 2016 treatment note showing Plaintiff's Zoloft prescription was increased to help manage Plaintiff's depression. (AR 574-75.) The ALJ found that the April 2016 treatment note showed Plaintiff's improvement, particularly because Plaintiff reported Zoloft "ha[d] helped a lot" and that she was "[much] better." (AR 39.) Plaintiff then points to Dr. Ramsey's September 2016 treatment note in which Dr. Ramsey found Plaintiff was aggressive, with tangential, circumstantial thought

process, poor judgement and insight, and showed flight of ideas, as well as memory impairment. (JS at 13, citing AR 550.) Plaintiff cites to an October 2016 note by Cheryl Allen, LCSW, diagnosing Plaintiff with major depressive disorder, recurrent, severe, without psychotic features. (JS at 13-14, citing AR 548.) Plaintiff then notes a January 2017 depression screening test which found Plaintiff was positive for depression. (JS 14, citing AR 635.) The ALJ found this note to also support a finding of improvement since Plaintiff reported her anxiety was a "lot better with Zoloft." (AR 39, citing AR 635.) Lastly, Plaintiff cites to a March 2017 treatment note in which a review of systems found Plaintiff presented suicidal thoughts, frank depression, anhedonia, anxiety, insomnia, difficulty concentrating, mood swings, personality change, and recreational drug use. (JS at 14, citing AR 628-629.)

Here, the ALJ noted that between April 2016 and January 2017, Plaintiff reported an improved condition. (AR 39, citing AR 557 (October 2016 note reporting "anxiety is lot better"), AR 558 (September 2016 note stating that Plaintiff is better with Zoloft), AR 561 (August 2016), AR 567 (June 2016), AR 570 (May 2016), AR 573 ( April 2016 note stating that "Zoloft has helped a lot/had fallen apart but so [much]better with Zoloft/anxiety is better no more impending doom").) Plaintiff presents a different interpretation of the medical record. However, disagreement with the ALJ's interpretation of the medical record does not warrant reversal of the ALJ's decision. "[W]hen the evidence is susceptible to more than one rational interpretation," the Court will uphold the ALJ's determination. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). While the ALJ interpreted the medical record differently than Plaintiff has, the ALJ relied on documented improvement in Plaintiff's mental health when she discounted Dr. Ramsey's opinion. (*See* AR 39.) Thus, this was a specific and legitimate reason for discounting Dr. Ramsey's opinion.

Fourth and finally, the ALJ discounted Dr. Ramsey's opinion because Plaintiff had not been psychiatrically hospitalized. (AR 40.) However, "[w]hen a plaintiff has received mental health treatment, courts regularly reject a lack of psychiatric

13

hospitalization as a specific and legitimate reason to discount a medical provider's opinion." *David D. v. Saul*, --- F. Supp. 3d ----, 2019 WL 3776998, at *7 (D. Or. Aug. 12, 2019) (citing *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) ("[T]hat plaintiff was not psychiatrically hospitalized does not mean that he did not have a mental health impairment that prevented him from working.")); *Finn v. Astrue*, No. EDCV11-1388 CW, 2013 WL 501661, at *5 (C.D. Cal. Feb. 7, 2013) ("[T]he conclusion that the opined mental limitations are not supported because Plaintiff was not hospitalized for mental health treatment is unfounded."). Here, Plaintiff has sought ongoing mental health treatment and has been a part of outpatient programs. At the hearing, Plaintiff also testified to receiving treatment from Dr. Ramsey and regularly taking medications. (AR 57-58, 72-73.) As a result, this reason is improper for discounting Dr. Ramsey's opinion.

Because the ALJ has provided two specific and legitimate reasons for discounting Dr. Ramsey's opinion, "[a]ny error in relying on additional reasons to reject [Dr. Ramsey's] opinion was harmless." *See Barney v. Berryhill*, 769 F. App'x 465, 466 (9th Cir. 2019) (mem.); *Howell v. Astrue*, No. CV 08-935-OP, 2009 WL 2711953, at *4-6 (Aug. 24, 2009) (holding that the ALJ's erroneous reliance was harmless error where the ALJ properly relied on other reasons for discounting a treating physician's opinion).

As to the ALJ's treatment of Dr. Caruso-Radin's finding that Plaintiff "is able to understand, remember, and carry-out a two-step command involving simple instructions" (AR 114), Plaintiff asserts that the ALJ "rejected" the limitation (JS at 8). The Commissioner counters that the ALJ did not entirely rely on any one doctor's opinion when determining Plaintiff's RFC and that this finding was not a limitation but rather only a notation of Plaintiff's ability. (JS at 20.) The Court agrees with the Commissioner.

Dr. Caruso-Radin found Plaintiff's ability to understand and remember detailed instructions to be moderately limited and explained that Plaintiff is "able to

understand, remember, and carry out a two-step command involving simple instructions." (AR 114.) However, Dr. Suansilppongse found Plaintiff did not have understanding and memory limitations, finding that Plaintiff was "able to understand and remember instructions." (AR 134.) In addition, Dr. Suansilppongse found Plaintiff's ability to carry out short and simple instructions, as well as detailed instructions, was not significantly limited. (*Id*) Dr. Suansilppongse did find that Plaintiff's ability to maintain attention and concentration for an extended period was moderately limited. (*Id.*) Similarly, Dr. Suansilppongse found Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods to be moderately limited. (AR 135.) Specifically, Dr. Suansilppongse explained Plaintiff is "able to carry out instructions. Her anxiety and depressive reaction as well as alleged pain would interfere with her ability for sustained concentration and persistence or for task completion. However, [Plaintiff] would be able to complete tasks at an acceptable pace." (*Id.*)

Here, the ALJ found that the findings of the doctors were "reasonable and consistent with the record as a whole." (AR 40.) The ALJ then "assessed greater functional limitations, taking into consideration the [Plaintiff's] subjective complaints." (*Id.*) Specifically, the ALJ found that Plaintiff could "concentrate for up to two-hour periods of time but would be limited to unskilled tasks in a nonpublic setting. . . She cannot perform jobs requiring hypervigilance or intense concentration on a particular task." (AR 35-36.) In this regard the ALJ's RFC determination was appropriately based on the entire record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 123 (9th Cir. 2005) (finding that ALJ is not required to rely on the opinion of any one doctor).

///

///

///

15

In sum, the Court finds that the ALJ's reasons for discounting Dr. Ramsey's opinion – use of a checklist style form without any rationale and Plaintiff's documented improvement – constituted specific and legitimate reasons supported by substantial evidence allowing the ALJ to properly discount Dr. Ramsey's opinion.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 26, 2019

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**